UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| HALIMA WILLIAMS, ) | |
| ) | |
| Plaintiffs, ) | Case No. 5:24-cv-00137-GFVT |
| ) | |
| v. ) | |
| ) | |
| MEMBERS HERITAGE CREDIT UNION, ) | **ORDER** |
| *et al.*, ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on two Motions to Dismiss [R. 9; R. 10], alleging this action should be dismissed based on the lack of subject matter jurisdiction or failure to state a claim. The Plaintiff also requests Leave to File a Surreply [R. 15] and Leave to File a Supplemental Complaint [R. 14]. For the reasons that follow, the Defendants' requests will be **GRANTED** and the Plaintiff's requests will be **GRANTED IN PART** and **DENIED IN PART**.

I

Plaintiff Halima Williams received a loan from Defendant Members Heritage Credit Union (MHCU).[1] [R. 1 at 3.] According to the terms of the loan agreement, Ms. Williams was liable to MHCU for "reasonable attorney fees to the extent permitted by state law." *Id.* Ms. Williams ultimately defaulted on her MHCU loan. *Id.*

MHCU, through counsel Stoll Keenon Ogden (SKO), filed a complaint in Fayette County District Court to collect the amount due on Ms. Williams's MHCU loan. *Id.* MHCU moved for default judgment, which the state court granted. *Id.* The Default Judgment awarded MHCU

---

[1] These facts are taken from the Plaintiff's Complaint at [R. 1].

both the principal and interest on the MHCU Loan, as well as reasonable attorney fees to be determined by the Court. *Id.* at 4.

Neither MHCU nor SKO moved the state court for a liquidated award of reasonable attorney fees, nor did either party serve a Bill of Costs pursuant to KRS 453.040. Accordingly, the Plaintiff argues that this failure "operates as a waiver of MHCU's legal right to recover from Ms. Williams its court costs expended or incurred in the State Court Lawsuit." [R. 1 at 6.] Ms. Williams also alleges that the Defendants attempted to collect unliquidated expenses and self-awarded amounts of attorney fees. *Id.* at 2. Further, Ms. Williams asserts several violations of the Fair Debt Collection Practices Act and the Kentucky Consumer Protection Act. *Id.* Both MHCU and SKO filed Motions to Dismiss, asserting this action should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [R. 9; R. 10.]

Ms. Williams has also filed a Motion for Leave to File a Supplemental Complaint [R. 14] and Motion to File a Surreply [R. 15]. Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1) and (6). The Court, however, considers the 12(b)(1) argument first because the Rule 12(b)(6) argument becomes moot if the Court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946) for the proposition that a "motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction").

## II

### A

The first issue to resolve is standing. Although noticeably absent from their Motion to Dismiss, the Defendants argue that the Plaintiffs lack standing in their Reply. [R. 12 at 4.] The

Plaintiff subsequently filed a Motion for Leave to File a Surreply to address the standing argument. [R. 15.] Although this District's local rules do not specifically provide for the filing of a surreply, courts of this District frequently provide leave for such a filing where warranted. *See, e.g., Osborn v. Griffin,* 50 F. Supp. 3d 772, 809 (E.D. Ky. 2014); *Webb v. Jessamine County Fiscal Ct.,* 802 F. Supp. 2d 870, 875 (E.D. Ky. 2011). Having carefully reviewed the nature of the arguments in the Defendant's Reply, the Court concludes that additional briefing *only as it relates to standing* would (1) provide the Plaintiff with an adequate opportunity to respond to all of the Defendants' arguments and (2) aid in the Court's resolution of this dispute.

Having allowed the Plaintiff's Surreply, the Court next assesses the merits of the standing argument. Article III of the United States Constitution limits federal courts to hearing "Cases" and "Controversies." U.S. Const. art. III, § 2. Under the case and controversy requirement, a federal court lacks subject matter jurisdiction over a claim unless the plaintiff has standing to assert it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing must be independently established as to each claim and defendant. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial opinion." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Each of these elements must be satisfied for jurisdiction to exist because each represents "an 'irreducible constitutional minimum.'" *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560). The Defendants argue that the "Plaintiff's Complaint fails to allege concrete injury in fact and therefore, Plaintiff lacks standing." [R. 12 at 4.]

3

To state an injury in fact, the Plaintiff must show that the injury is both "(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan,* 504 U.S. at 560 (internal quotation marks and citations omitted).  The Defendants argue, at most, that there was a technical violation when SKO garnished in excess of the amount Ms. Williams owed.  [R. 12 at 5.]  However, any violation was cured when SKO remitted the amount in excess back to Ms. Williams.  *Id.*  Thus, Defendants argue Ms. Williams's harm is neither concrete, nor particular.  The Defendants also contend that "[t]here has been no threat of garnishment of Ms. Williams' wages to collect attorney's fees and costs."  *Id.* at 6.

The Plaintiff asserts that the Defendants argument is inconsistent—they first stated they were entitled to recover costs and expenses and now they are saying that they have never attempted to collect costs and expenses.  [R. 15-1 at 2.]  Despite Plaintiff's argument to the contrary, these two statements can be easily squared.  The Defendants being *entitled* to costs and expenses is not synonymous with them *actually* collecting said costs and expenses.

The Plaintiff also argues that case law dictates that "attempts to collect debts not owed" is considered actual damage.  [R. 15-1 at 7.]  While the Court does not dispute this assertion, counsel appears to gloss over the pivotal word: not.  The Plaintiff has provided no evidence that the Defendants have attempted to collect debts that were *not* owed.  Rather, the record reflects that the Defendants have collected the amount of the judgment plus interest.  Although an additional $20.00 was garnished, the overage was remitted back to the Plaintiff.  Because she has been remitted the amount charged in excess, the Court struggles to see how the Plaintiff has been injured.  Thus, the Court concludes that the Plaintiff lacks standing.  However, even if the Plaintiff's made the requisite standing showing, this action would still be dismissed under Rule 12(b) as discussed below.

4

**B**

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) come in two varieties: a facial attack or a factual attack. *Gentek Bldg. Prods., Inc., v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading." *Id.* When a motion raises a facial attack, the Court must accept all the "allegations in the complaint as true," and "if those allegations establish federal claims, jurisdiction exists." *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When the 12(b)(1) motion factually attacks subject matter jurisdiction, "no presumptive truthfulness applies to the allegations," and the court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330. All of Defendants' 12(b)(1) arguments are properly analyzed below as facial attacks on subject matter jurisdiction.

Defendants seek dismissal under 12(b)(1) under the Rooker-Feldman Doctrine, which provides that federal district courts lack subject matter jurisdiction over claims that effectively challenge a state court's final judgment. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). However, in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court clarified that the doctrine does not apply where the subsequent action merely calls into question the propriety of the prior state court judgment, but rather only where the subsequently action identifies the prior state court judgment as the source of the injury.

To determine whether the Rooker-Feldman Doctrine applies, the Court must focus on the source of the plaintiff's injury. In her Complaint, the Plaintiff asserts that the Defendants

5

"willfully and unfairly collect[ed] self-determined attorney's fees, court costs, and other expenses that are unliquidated and not awarded by court judgment." [R. 1 at 1.] There is no evidence, however, that the Plaintiff raised any objection in state court. The Plaintiffs rely heavily on *VanderKodde v. Mary Jane M. Elliot*, 951 F.3d 397 (6th Cir. 2020) for the proposition that the Defendants, in collecting unauthorized attorney fees, took independent action, causing the Rooker-Feldman doctrine to be inapplicable. In *VanderKodde*, the Plaintiff challenged the post-judgment interest used in creating writ-of-garnishment requests. They argued that the Defendants used an impermissibly high interest rate in the writs of garnishment, which violated the FDCPA. The Defendants sought to dismiss the action under the Rooker-Feldman Doctrine. The Sixth Circuit found "[t]his shows that inclusion of the unlawfully high amount owed in the writs of garnishment did not flow from the judgments as a natural, inevitable consequence of their existence. Instead, it required independent conduct by defendants." *VanderKodde*, 951 F.3d at 404. The Court will call this the "independent conduct" test.

  The Defendants rely heavily on a Western District of Wisconsin opinion, *Jung v. Cottonwood Financial Wisconsin*, No. 14-cv-241-jdp, 2014 WL 4796756 (W.D. Wis. 2014). In *Jung*, the district court found that the Rooker-Feldman doctrine has been construed to extend beyond injuries directly caused from the state court judgment to include claims that are "inextricably intertwined" with the state court decision. *Id.* at *2. "The determination of whether a federal claim is 'inextricably intertwined' hinges on whether it alleges that the supposed injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir. 2012). The district court went on to conclude "Jung's 'actual injury' is the state court's approval of defendants' request to garnish her wages, without

6

which there would not have been any allegedly unlawful collection practices." Jung, 2014 WL 479675 at *3. The Court calls this the "inextricably intertwined" test.

The state court's Default Judgment stated in pertinent part: "MHCU is hereby awarded its reasonable attorney' fees pursuant to Section 411.195 of the Kentucky Revised Statutes to be determined by the Court, and its expenses and court costs herein expended." [R. 1-4 at 3.] Pursuant to the Defendants' theory of the case, Plaintiff Williams's alleged injury is the unauthorized garnishment of her wages. It follows that the Plaintiff's alleged injury would not have occurred without the state court's approval of the Defendant's request to garnish Ms. Williams's wages. Accordingly, under the "inextricably intertwined" test, Ms. Williams's alleged injury was caused by the state court judgment.

Unfortunately for the Defendants, however, this Court must defer to the Circuit Court in which it sits, and the Sixth Circuit's construction of the Rooker-Feldman doctrine appears to have a narrower applicability. Under the "independent conduct" test, Plaintiff Williams is not targeting the state court judgment itself; rather, she is targeting the Defendants' action in attempting to collect unauthorized attorney fees and court costs. Under Sixth Circuit precedent, the Court finds this is sufficient to constitute a "independent conduct," rendering the Rooker-Feldman Doctrine inapplicable.

C

The Defendants next argue that "Ms. Williams' claims are barred by the doctrine of *res judicata* by virtue of the Default Judgment entered against Ms. Williams in Fayette District Court." [R. 9 at 1.] The Defendants bear the burden of proof for that defense. *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). The Sixth Circuit has explained that:

7

> Res judicata generally includes two separate concepts—claim preclusion and issue preclusion. Claim preclusion, or true res judicata, refers to [the] effect of a prior judgment in foreclosing a subsequent claim that has never been litigated, because of a determination that it should have been advanced in an earlier action. Issue preclusion, on the other hand, refers to the foreclosure of an issue previously litigated.

*Mitchell v. Chapman*, 343 F.3d 811, 818 n.5 (6th Cir. 2003) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). A claim is barred by res judicata where the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated, or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

The first two factors are easily met—a default judgment in considered a final decision on the merits and the parties are the same in both the federal and state court suits. The last two factors present a more difficult resolution. With respect to the third factor, the Plaintiff's argument that the present claim did not accrue until after the litigation had terminated such that they could not have been litigated in the prior action is well-taken. In *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006), the Sixth Circuit found that the Plaintiff could not have asserted a claim that she did not have at the time. *Id.* Further, they noted that *res judicata* does not apply to claims that were not ripe at the time of the first suit. *Id.*

Presumably the crux of the *res judicata* rests on whether there is "an identity of the causes of action." The state court debt collection proceedings Defendants brought against Williams concerned Ms. Williams's loan and subsequent payments she failed to make on those loans, while the claims in the instant proceeding concern the Defendants' alleged deceptive or

8

misleading debt collection practices. The evidence required in the first suit would be markedly different from the evidence that would be required to challenge the instant suit. Further, the facts essential to the present action, such as whether the Plaintiff was injured by the Defendants "deceptive or misleading" debt collection practices, were not present in the first action. Accordingly, the two suits do not involve the same causes of action and *res judicata* does not apply.

### D

The Defendants also seek dismissal under Rule 12(b)(6) for failure to state a claim. [R. 9; R. 10.] The Motions to Dismiss are brought pursuant to Rule 12(b)(6), which tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). According to the Sixth Circuit, "[a] claim has

9

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Ms. Williams's argument hinges on the fact that in the garnishment orders states the amount due as "$1,184.21, plus interest, attorneys' fees, expenses and costs." [R. 1-7 at 2.] She essentially argues because this verbiage was included in the garnishment orders, she was paying an undisclosed amount of attorney fees in violation of the FDCPA and KCPA. This is not the case.

The Defendants make clear that they have not attempted to collect, nor have they collected any attorney fees or court costs. In fact, the Defendants lay out, rather clearly, where Ms. Williams's garnishments have been allocated since judgment was entered—none of which has gone to attorney fees or court costs. [R. 12 at 4.] Rather, up to this point, Ms. Williams was paying the principal and interest that were a part of her state court judgment. Once she paid the entirety of the judgment amount, which is $1,184.21 plus accrued interest (exclusive of attorney fees and court costs), the Defendants sought to remit the portion that was overpaid.

In short, all of Ms. Williams's payments are accounted for. Up to this point, Ms. Williams has simply been paying the amount ordered in the state court judgment plus the accrued interest. Because the Defendants have neither attempted to collect nor have collected any pre- or post-judgment costs, the information contained in both the Liens and Garnishment, and the email correspondence did not violate the FDCPA or KCPA.

### E

The Plaintiff next requests leave to file a Supplemental Complaint. [R. 14.] Under Rule 15(d) of the Federal Rules of Civil Procedure, which provides that "the court may, on just terms,

permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A supplemental pleading is different from an amended pleading because "an amended pleading relates to matters which occurred prior to the filing of the original pleading and entirely replaces such pleading; a supplemental pleading addresses events occurring subsequent to the initial pleading and adds to such pleading." *Brian A. v. Bredesen*, No. 3:00–0445, 2009 WL 4730352, at *1 (M.D. Tenn. Dec. 4, 2009). Whether to grant a motion to file a supplemental pleading is within the discretion of the Court. *Marshall v. City of Columbus*, No. 2:05–CV–484, 2008 WL 4334616, at *2 (S.D. Ohio Sept. 17, 2008). The Court may consider the same factors that apply to motions filed pursuant to Rule 15(a): "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id.* (internal quotation marks omitted).

    The Defendants' included in their Motion to Dismiss the additional facts the Plaintiff wishes to include in her Complaint. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Because the Complaint made mention of the Defendants' exhibits in their original Complaint, the Court considered these exhibits in dismissing the action for failure to state a claim. Thus, allowing the Plaintiff to supplement her Complaint with these same facts would not change the outcome of this case.

11

**F**

Last, although the Plaintiff does not include the lack of Bill of Costs in her alleged counts, she does mention it in the Complaint. Specifically, the Plaintiff alleges that neither MHCU nor SKO moved the state court for a liquidated award of reasonable attorney fees, nor did either party serve a Bill of Costs pursuant to KRS 453.040. Accordingly, the Plaintiff argues that this failure "operates as a waiver of MHCU's legal right to recover from Ms. Williams its court costs expended or incurred in the State Court Lawsuit." [R. 1 at 6.] The Defendants argue that CR 54.04 only applies to pre-judgment costs.

In Kentucky, "[t]he successful party in any action shall recover his costs, unless otherwise provided by law." KRS § 453.040(1)(a). Kentucky Rule of Civil Procedure 54.04 provides the proper procedure parties must follow to recover their costs in Kentucky courts:

> A party entitled to recover costs shall prepare and serve upon the party liable therefor a bill itemizing the costs incurred by him in the action, including filing fees, fees incident to service of process and summoning of witnesses, jury fees, warning order attorney, and guardian ad litem fees, costs of the originals of any depositions (whether taken stenographically or by other than stenographic means), fees for extraordinary services ordered to be paid by the court, and such other costs as are ordinarily recoverable by the successful party. If within five days after such service no exceptions to the bill are served on the prevailing party, the clerk shall endorse on the face of the judgment the total amount of costs recoverable as a part of the judgment. Exceptions shall be heard and resolved by the trial court in the form of a supplemental judgment.

CR 54.04(2).

The parties agree that, after Defendants obtained the Default Judgment in state court, it did not file a bill of costs itemizing the costs it had incurred up until the date the Default Judgment was issued. Because the Defendants have failed to submit a Bill of Costs with respect to pre-judgment costs, it is clear that they can no longer do so under Kentucky law. Despite the

Plaintiff's contentions that the Defendants sought to collect pre-judgment costs, the Defendants have emphatically stated that "MHCU did not seek its pre-judgment costs." [R. 9 at 12.]

However, the question remains whether they are permitted to submit post-judgment expenses under Kentucky law. The answer is yes. *Ham v. Midland Funding*, LLC, 2018 WL 1626685 (W.D. Ky. 2018), which is cited by the Defendants, is persuasive. In *Ham*, the court found that "that CR 54.04 applies only to the recovery of costs incurred up until the date a judgment is entered." As support, the *Ham* court concluded that "the only costs CR 54.04 specifically lists as examples are prejudgment costs" and no case law exists where CR 54.04 has applied "in the context of post-judgment garnishment costs or any other post-trial costs associated with executing a judgment." *Id.* at *7. This reasoning makes both logical and practical sense to the Court, and the Plaintiffs have failed to provide a compelling argument to the contrary. Thus, to the extent the Defendants seek to recover post-judgment expenses without submitting a bill of costs, they are entitled to do so under Kentucky law and doing so is not in violation of either the FDCPA or the KCPA.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motions to Dismiss **[R. 9; R. 10]** are **GRANTED**;

2. The Plaintiff's Motion for Leave to File a Surreply **[R. 14]** is **GRANTED**;

3. The Plaintiff's Motions for Leave to File a Supplemental Complaint **[R. 15]** is **DENIED**; and

4. This matter is **DISMISSED** with prejudice and **STRICKEN** from the Court's active docket.

This the 19th day March 2025.

*signature*

Gregory F. Van Tatenhove
United States District Judge